IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>vs.<br><br>TODD CHRISLEY,<br>JULIE CHRISLEY, and<br>PETER TARANTINO,<br><br>　　Defendants. | )<br>)<br>)<br>)<br>)<br>)   Case No. 1:19-CR-297-ELR-JSA<br>)<br>)<br>)   **FILED UNDER SEAL**<br>)<br>)<br>)<br>)<br>) |

**JULIE CHRISLEY'S SENTENCING STATEMENT**

Before this Court for re-sentencing, Julie Chrisley does not request extraordinary relief. She merely asks that this Court impose a sentence consistent with the reduction in her Guidelines and the variance the Court granted her almost two years ago.

The government has agreed that the facts support a reduction of the loss amount by over $12 million, which amounts to a 70% drop. The new Sentencing Guidelines also give Mrs. Chrisley a two-point reduction due to her lack of criminal history. Yet the government asks this Court to impose the same 84-month sentence it imposed with a $12 million higher loss amount and *no* zero-point offender reduction. In doing so, the government asks that this Court walk back the approximately 30% variance it granted Mrs. Chrisley at the 2022

1

sentencing hearing and ignore the 10% reduction the Court gave to her co-defendant, Peter Tarantino, solely for the zero-point offender reduction. (Doc. 424.)

For her part, Mrs. Chrisley asks this Court to impose a sentence consistent with the Guidelines reductions and variance it ordered in 2022, due to her "age, health, the minor children, the caretaking of the older parents and mother-in-law." In the 20 months Mrs. Chrisley has been incarcerated, she has aged, her health has further deteriorated, her minor children suffer from the absence of their mother, and her parents and mother-in-law are sicker. Almost two years later, the need for a downward variance has only increased.

There are also new facts that call for a variance, which the Court could not have previously known. Since her report to prison, Mrs. Chrisley's two youngest children struggle with "day-to-day functioning" due to the absence of their mother, according to their therapist. Her father underwent major cardiac surgery, and her once-retired mother has been forced to return to work to care for him, now that their caretaker, Julie, is absent. And while this was happening outside the prison walls, in the intervening 20 months, Mrs. Chrisley has been a model inmate within them, completing 43 classes and programs, working multiple positions, and continuing to make monthly payments on her restitution. She has taken advantage of educational and

vocational training in the most effective manner, as § 3553(a) contemplates for rehabilitation.

Mrs. Chrisley and the government agree that her offense level is four-points lower than in 2022, resulting in a Guidelines range of 78 to 97 months. Granting Mrs. Chrisley a variance like the one she received in 2022 would result in a sentence of 60 months. Conversely, giving her the same 84-month prison sentence would not promote respect for the law, as § 3553(a) calls for. It would do the opposite, suggesting that a defendant's successful appeal, reconsidered facts that result in a substantially lower loss amount, and a retroactive change in the Guidelines applicable to a co-defendant do not matter when it comes to *this* defendant's sentencing. That would not serve the purposes of § 3553(a). A just punishment would appropriately reflect the change in the nature and circumstances of the offense.

## **PROCEDURAL HISTORY**

Julie Chrisley was convicted of fraud offenses in May 2022. (Doc. 228.) On November 21, 2022, the Court held a sentencing hearing and calculated her adjusted Guidelines range as 121 to 151 months' imprisonment based, in large part, on a loss amount of more than $17 million. After considering the Guidelines and the § 3553(a) factors, however, the Court sentenced Mrs. Chrisley to 84 months' imprisonment—37 months and about 30% below the bottom of the Guidelines range. The Court found the downward variance was

3

appropriate under Julie's specific individual circumstances, which included "age, health, the minor children, the caretaking of the older parents and mother-in-law." (Doc. 363: Sent. Tr. at 227.)

Mrs. Chrisley appealed her convictions and sentence. The Eleventh Circuit affirmed her convictions but vacated her sentence because "[t]he district court did not identify the evidence it relied on to hold Julie accountable for losses incurred before 2007[.]" (Doc. 415 at 3, 32.) On remand, this Court must determine "what the proper loss amount attributable to Julie is for purposes of the base offense level, restitution, and forfeiture" and "make factual findings about when Julie's involvement in the conspiracy began." (*Id.* at 44.)

For purposes of resentencing, Mrs. Chrisley and the government agree that the loss should only be calculated from 2007 onward. Thus, the proper loss amount is $4.7 million—a more than 70% reduction in the loss amount originally calculated by the Court. In addition, the parties agree that Mrs. Chrisley is entitled to a zero-point offender reduction, a new Guidelines provision that gives a defendant a two-level reduction if they have zero criminal history points. As a result, the parties agree that the adjusted Guideline range is 78 to 97 months.

Despite this significant reduction in the Guidelines, the government asks this Court to impose the same sentence. (Doc. 433 at 4.) It does not provide any

reason why this significant reduction in loss amount and new Guidelines should count for nothing. *Id.* Nor does it explain why it believes that the Court should change course from its prior decision that Mrs. Chrisley was entitled to a significant downward variance from the Guidelines based on the § 3553(a) factors. *Id.* And nowhere does the government argue why co-defendant Peter Tarantino should get a 10% sentence reduction as a result of the new, zero-point Guidelines guidance while Mrs. Chrisley should not.

## ARGUMENT

After *United States v. Booker*, 543 U.S. 220 (2005), the overarching legislative command for district courts at sentencing is that a sentence must be sufficient, but not greater than necessary, to comply with the sentencing goals mandated by Congress: including punishment, respect for the law, and deterrence. *See* 18 U.S.C. § 3553(a). A sentence of no more than 60 months in this case meets that directive.

Before imposing a sentence, the Court must first calculate the applicable guideline range. Here, both parties agree that the appropriate range is 78 to 97 months. In addition, the government does not dispute on remand the Court's prior finding that Mrs. Chrisley should receive a significant downward variance. Still, the government says Mrs. Chrisley's sentence should not change—despite the approximately $12.5 million reduction in loss amount and corresponding reduction of multiple years under the Guidelines range. But to

5

do so would necessarily ignore either (i) the import of the Guidelines range as a starting point for a sentencing calculation or (ii) this Court's prior findings related to the statutory factors listed in 18 U.S.C. § 3553(a).

In either case, the government's request conflicts with the overarching goals of sentencing mandated by Congress. To this end, the Court must consider the recommended guidelines range together with the statutory factors listed in 18 U.S.C. § 3553(a) and determine the appropriate sentence. Based on the new Guidelines Range, this Court's prior findings related to the § 3553(a) factors, and the fact that Ms. Chrisley has been a model inmate, justice requires a sentence of 60 months or less.

## I.  THE HISTORY AND CHARACTER OF JULIE CHRISLEY

"[I]f ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance." *United States v. Adelson*, 441 F. Supp. 2d 506, 513-14 (S.D.N.Y. 2006), *aff'd* 301 Fed. Appx. 92 (2d Cir. 2008). That's how one district court aptly summarized the importance of a defendant's history and characteristics as part of the § 3553(a) analysis. "This elementary principle of weighing the good with the bad, which is common to all great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it

6

directed courts to consider, as a necessary sentencing factor, 'the history and characteristics of the defendant.'" *Id*.

As the Court is aware, the crime for which Ms. Chrisley was convicted is an aberration in her otherwise law-abiding life. For over 20 years, Ms. Chrisley has devoted her life to serving as the mother of four children while balancing her career as a real estate agent. Her four children include an adopted eleven-year-old granddaughter, whose biological parents were unable to care for her due to their struggles with drug addiction and incarceration.[1]

Since the first day of her incarceration, Ms. Chrisley has worked to better herself as an inmate and citizen and is poised to seamlessly re-enter society upon her release. During her 20 months in prison, Ms. Chrisley has served as a model inmate. While incarcerated, she has received 43 certificates for completing classes and programs, including the Threshold Reentry Program, Victim Impact, and a seven-week Bible study.[2] Ms. Chrisley has completed numerous parenting programs and First Step Act classes. She has received a ServSafe Food Protection Manager Certificate and a license to operate a forklift. Ms. Chrisley continues to take psychology classes and seeks out any new classes the facility offers. She has worked continuously during her

---

[1] Letter of Savannah Chrisley, p.1. The character letters submitted in support of Ms. Chrisley are attached as Exhibit 1 to this pleading.

[2] The Bureau of Prisons file for Ms. Chrisley and a short statement from her about it are attached as Exhibit 2 to this pleading.

time as an inmate, including in the commissary, food service, and laundry. Ms. Chrisley currently works in two different positions in the facility. She also has taught classes to other inmates. Ms. Chrisley has no disciplinary history as an inmate, and she has made monthly payments toward her restitution as part of the BOP's Inmate Financial Responsibility Program.

As the Court knows from the initial sentencing hearing, Mrs. Chrisley has faced substantial hardship and suffered tremendous loss throughout her life. She lost her only sibling, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Yet, she has steadfastly "remained active in her community, using her platform to raise awareness for various causes and helping others in need," including fellow breast cancer survivors through the Susan G. Komen Foundation.[3]

Ms. Chrisley is the only surviving child of her two seventy-year-old parents, a retired minister and once-retired bank manager. Due to Mrs. Chrisley's absence, her parents have no caretaker, and her mother has been forced to return to work to support herself and her husband, who underwent major cardiac surgery this year.[4] Mrs. Chrisley's absence has been even more difficult on her two youngest children. For her eighteen-year-old son Grayson,

---

[3]   Letter of Bill Rawlings, attached in Exhibit 1.

[4]   Letter of Harvey and Pam Hughes, attached in Exhibit 1.

8

his mother's incarceration has "been the hardest years of [his] life."[5]



## II. THE PURPOSES OF SENTENCING AND THE COLLATERAL CONSEQUENCES OF CONVICTION

Numerous Courts of Appeals have recognized the importance of considering the collateral consequences a conviction may have on a particular defendant when determining a sentence. *See e.g.*, *United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009); *United States v. Pauley*, 511 F.3d 486 (4th Cir. 2007). Many of these collateral consequences are statutorily mandated. In fact, one

---

[5]   Letter of Grayson Chrisley, attached in Exhibit 1.

[6]   █████████████████████

[7]   █████████████████████.

[8]   █████████████████████

9

federal court has noted that "[t]here are nationwide nearly 50,000 federal and state statutes and regulations that impose penalties, disabilities, or disadvantages on convicted felons." *United States v. Nesbeth*, No. 15-CR-18 (FB), 2016 WL 3022073, at *5 (E.D.N.Y. May 24, 2016). This broad range of collateral consequences "serve no useful function other than to further punish criminal defendants after they have complete their court-imposed sentences." *See id.* at *1. In addition to the statutory restrictions, Mrs. Chrisley will face "the general reluctance of private employers to hire ex-convicts." *Nesbeth*, No. 15-CR-18 (FB), 2016 WL 3022073, at *5.

Undoubtedly, Mrs. Chrisley's record will follow her for the rest of her life. The collateral consequences convey the seriousness of this offense and provide significant punishment for it. Courts have granted departures or variances in similar circumstances—where, for example, a defendant lost a prized job, her business, her good reputation, or even her marriage as a result of the criminal charges. *See United States v. Vigil*, 476 F. Supp. 2d 1231, 1315 (D.N.M. 2007) (finding variance appropriate where defendant was already collaterally punished by loss of his position, loss of his reputation, and the widespread media coverage of his case); *United States v. Samaras*, 390 F.Supp.2d 805, 809 (E.D. Wis. 2005) (granting variance in part because defendant had lost good public sector job). Here, the widespread publicity of these convictions guarantee that the record will follow Mrs. Chrisley for the rest of her life.

10

Moreover, recidivism is not a concern here. As detailed above, the offense conduct here stands in stark contrast to Mrs. Chrisley's otherwise law-abiding life. And the case itself is more than enough of a reminder of the penalties for breaking the law. *See, e.g.*, *United States v. Anderson*, 267 F. App'x 847, 850 (11th Cir. 2008) (upholding home detention sentence for defendant convicted of insider trading in light of reputational damage, "deterrent effect caused by proceedings," and loss of employment). Mrs. Chrisley has been financially ruined by the conviction. Her family has been torn apart. And her reputation has been irreparably harmed. There is no reason to believe a sentence near the Guidelines Range is necessary to prevent her from repeating her conduct.

As the Court determined when it initially sentenced Mrs. Chrisley, a sentence in the Guidelines Range is *not* necessary here to "reflect the seriousness of the offense" or "to promote respect for the law." Rather, a substantial variance is again appropriate.

## III. PERTINENT POLICY STATEMENTS

Although there are no pertinent policy statements, there is widespread criticism of the loss table in the Sentencing Guidelines, which "was not developed by the Sentencing Commission using an empirical approach based on data about past sentencing practices." *United States v. Corsey*, 723 F.3d 366, 379 (2d Cir. 2013). Rather, the loss table is used as a clumsy proxy for the seriousness of the offense, even though it fails to account for any of the

11

substantive aspects of the crime, including its means and the defendant's motivation. As a result, U.S. Sentencing Commission studies demonstrate that more than half of the sentences that involve the loss table for economic crimes depart below the recommended guidelines range.[9] According to Mr. Allenbaugh, "[s]everal types of evidence indicate that a primary reason for judicial dissatisfaction with § 2B1.1, at least as it applies to fraud offenses, is that loss amount (in combination with the many other upward adjustments provided by the guideline) frequently inflates sentences far more than necessary to achieve the purposes of sentencing."

## **CONCLUSION**

As the Court considers what constitutes a reasonable sentence pursuant to § 3553(a), it should keep in mind the Supreme Court's admonition that "punishment should fit the offender and not merely the crime." *Pepper v. United States*, 131 S.Ct. 1229, 1240 (2011) (cleaned up). In *Koon v. United States*, 518 U.S. 81, 113 (1996), the Supreme Court observed, "it has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." In this context, a sentence of no more

---

[9] *See, e.g.*, Mark Allenbaugh, "*Draw from Nowhere*": *A Review of the U.S. Sentencing Commission's White-Collar Sentencing Guidelines and Loss Data*, 26 Fed. Sent. R. 1, 19-27 (2013).

than 60 months achieves the purposes of sentencing but is "not greater than necessary."

Mrs. Chrisley now faces a loss amount that is $12 million *lower* than the Court initially believed, and she also receives a reduction under the new Guidelines guidance for her lack of criminal history. Almost two years later, her need for an approximately 30% downward departure has only increased. Section 3553(a) requires a just punishment, which should account for the change in the nature and circumstances of the offense. Given all these factors, Mrs. Chrisley respectfully requests that this Court impose a sentence of no more than 60 months.

WHEREFORE, based on the information contained in this memorandum and at the sentencing hearing, Mrs. Chrisley respectfully requests that the Court order a sentence of not more than 60 months.

Respectfully submitted,

*/s/ J. Alex Little*
J. Alex Little (TN BPR #29858)
   *Pro Hac Vice*
Zachary C. Lawson (TN BPR #36092)
   *Pro Hac Vice*
LITSON PLLC
54 Music Square East, Suite 300
Nashville, TN 37203
615-985-8189
alex@litson.co
zack@litson.co
*Attorneys for Julie Chrisley*

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of this pleading was served on the attorneys of record via the Court's Electronic Case Filing System on this 24th day of September, 2024.

_____
J. Alex Little