1

1          UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF GEORGIA
2                  ATLANTA DIVISION

3

4    UNITED STATES OF AMERICA

5
        -VS-                    DOCKET NO. 1:19-CR-00297-ELR-JSA
6

7    JULIE CHRISLEY,

8
            DEFENDANT.
9

10

11

          TRANSCRIPT OF RE-SENTENCING PROCEEDINGS
12        BEFORE THE HONORABLE ELEANOR L. ROSS
              UNITED STATES DISTRICT JUDGE
13                SEPTEMBER 25, 2024

14

15

    APPEARANCES:
16

    ON BEHALF OF THE GOVERNMENT:
17
        ANNALISE KATHLEEN PETERS, ATTORNEY AT LAW
18      ASSISTANT UNITED STATES ATTORNEY

19      ALEX SISTLA, ESQ.
        ASSISTANT UNITED STATES ATTORNEY
20
    ON BEHALF OF THE DEFENDANT:
21
        JOSEPH ALEXANDER LITTLE, IV
22

23

24   ELIZABETH G. COHN, RMR, CRR
     OFFICIAL COURT REPORTER
25   UNITED STATES DISTRICT COURT
     ATLANTA, GEORGIA

2

1              (ATLANTA, FULTON COUNTY, GEORGIA; SEPTEMBER 25,

2     2024, AT 9:58 A.M. IN OPEN COURT.)

3              THE COURT:  THANK YOU, SIR.

4              THANK YOU.  GOOD MORNING.  PLEASE BE SEATED.

5              ALL RIGHT.  I NOW CALL THE CASE OF THE UNITED STATES

6     OF AMERICA VERSUS JULIE CHRISLEY.  THIS IS CRIMINAL ACTION

7     19-CR-297.

8              ON JUNE 7TH, 2022, MRS. CHRISLEY WAS FOUND GUILTY ON

9     SEVERAL COUNTS FOLLOWING A JURY TRIAL, INCLUDING FIVE COUNTS OF

10    BANK FRAUD, ONE COUNT OF WIRE FRAUD, ONE COUNT OF CONSPIRACY TO

11    DEFRAUD THE UNITED STATES OF AMERICA, ONE COUNT OF TAX EVASION,

12    AND ALSO ONE COUNT OF OBSTRUCTION OF JUSTICE.

13             ON NOVEMBER 21ST, 2022, I DID SENTENCE MRS. CHRISLEY

14    TO 84 MONTHS' IMPRISONMENT FOLLOWED BY THREE YEARS OF

15    SUPERVISED RELEASE WITH SPECIAL CONDITIONS, WHICH WAS WELL

16    BELOW THE CALCULATED SENTENCING GUIDELINE RANGE FOR HER CRIMES

17    OF CONVICTION, AS WELL AS BEING WELL BELOW THE PROSECUTION'S

18    SENTENCE RECOMMENDATION.

19             AS I SAID AT THAT TIME, THE REASONS FOR MY DOWNWARD

20    VARIANCE INCLUDED HER AGE, HEALTH, HAVING MINOR CHILDREN AT

21    HOME, AND BEING A CARETAKER FOR ELDERLY PARENTS.

22             IN JUNE OF 2024, THE ELEVENTH CIRCUIT COURT OF

23    APPEALS VACATED THE SENTENCE AND DIRECTED THAT I RE-SENTENCE

24    MRS. CHRISLEY IN ACCORDANCE WITH A LOSS AMOUNT THAT DID NOT

25    INCLUDE ONE YEAR OF THE MULTI-YEAR CONSPIRACY, WHICH IS WHAT

3

1    BRINGS US HERE TODAY.

2              SO GOOD MORNING AGAIN.  ON BEHALF OF THE GOVERNMENT,

3    PLEASE ANNOUNCE YOUR APPEARANCE FOR THE RECORD.

4              MS. PETERS:  GOOD MORNING, YOUR HONOR.  ANNALISE

5    PETERS AND ALEX SISTLA ON BEHALF OF THE UNITED STATES.

6              AND WITH US AT COUNSEL TABLE IS SPECIAL AGENT STEPHEN

7    RYSKOSKI FROM THE FBI.

8              THE COURT:  GOOD MORNING TO ALL OF YOU.

9              AND ON BEHALF OF MRS. CHRISLEY, WHO IS PRESENT IN

10   COURT, PLEASE ANNOUNCE YOUR APPEARANCE FOR THE RECORD.

11             MR. LITTLE:  GOOD MORNING, YOUR HONOR.  ALEX LITTLE

12   ON BEHALF OF MS. CHRISLEY.

13             THE COURT:  GOOD MORNING TO YOU, SIR.

14             GOOD MORNING TO YOU, MS. CHRISLEY.

15             THE DEFENDANT:  GOOD MORNING.

16             THE COURT:  ALSO ON BEHALF OF UNITED STATES

17   PROBATION, IF YOU WOULD ANNOUNCE YOUR APPEARANCE FOR THE

18   RECORD.

19             THE PROBATION OFFICER:  GOOD MORNING, YOUR HONOR.

20   DANA JOHNSON.

21             THE COURT:  GOOD MORNING TO YOU, MA'AM.

22             ALL RIGHT.  MRS. CHRISLEY, HAVE YOU REVIEWED WITH

23   YOUR COUNSEL THE FINDINGS OF THE ELEVENTH CIRCUIT AND ALSO THE

24   IMPACT OF THOSE FINDINGS ON THE APPLICABLE GUIDELINE

25   CALCULATIONS?

4

1                    THE DEFENDANT:  YES, MA'AM, I HAVE.

2                    THE COURT:  ALL RIGHT.  I WILL REVIEW THOSE NOW.

3                    THE ADVISORY CUSTODY GUIDELINE RANGE IS NOW

4     CALCULATED AS 78 TO 97 MONTHS.  MS. CHRISLEY'S CRIMINAL HISTORY

5     CATEGORY IS STILL FOUND TO BE I.  THESE CALCULATIONS ARE BASED

6     ON A TOTAL OFFENSE LEVEL OF 28 THAT STARTS WITH A BASE OFFENSE

7     LEVEL OF SEVEN ON THE BANK AND WIRE FRAUD COUNTS.  THERE IS NOW

8     AN 18-LEVEL INCREASE BECAUSE THE LOSS AMOUNT IS GREATER THAN

9     $3.5 MILLION BUT IT IS LESS THAN $9.5 MILLION.  HERE, IT HAS

10    BEEN CORRECTED TO $4.7 MILLION.

11                   THERE IS A TWO-LEVEL INCREASE BECAUSE MORE THAN $1

12    MILLION WAS DERIVED FROM ONE OR MORE FINANCIAL INSTITUTIONS AS

13    A RESULT OF THE OFFENSE; A TWO-LEVEL INCREASE FOR OBSTRUCTION

14    OF JUSTICE; AND A TWO-LEVEL REDUCTION FOR WHAT WE CALL THE ZERO

15    POINT OFFENDER STATUS.

16                   THAT GIVES US AN ADJUSTED OFFENSE LEVEL FOR THE BANK

17    AND WIRE FRAUD OF 27.  SO THAT'S OUR FIRST ADJUSTED OFFENSE

18    LEVEL.

19                   THEN WE MOVE TO THE CONSPIRACY TO DEFRAUD THE UNITED

20    STATES, AS WELL AS THE TAX EVASION COUNTS.  AND THERE WE START

21    WITH A BASE OFFENSE LEVEL OF 20.  THERE IS A TWO-LEVEL INCREASE

22    THERE FOR OBSTRUCTION, WHICH GIVES US AN ADJUSTED OFFENSE LEVEL

23    THERE OF 22.

24                   THEN WE ALSO HAVE FOR THE OBSTRUCTION COUNT ITSELF,

25    WHICH IS COUNT 12, A BASE OFFENSE LEVEL OF 16.

1          SO OUT OF THOSE ADJUSTED OFFENSE LEVELS, THE GREATEST

2     ONE, OF COURSE, IS 27.  AND WE ADD ONE LEVEL TO THAT FOR A

3     MULTIPLE-COUNT ADJUSTMENT, WHICH BRINGS US UP TO A TOTAL

4     OFFENSE LEVEL OF 28.  AGAIN, WHEN COMBINED WITH A CRIMINAL

5     HISTORY CATEGORY OF I, WE ARE AT 78 TO 97 MONTHS IN CUSTODY; 78

6     TO 97.

7          ARE THERE ANY OBJECTIONS TO THOSE CALCULATIONS, ON

8     BEHALF OF THE GOVERNMENT?

9          MS. PETERS:  NO, YOUR HONOR.

10          THE COURT:  ON BEHALF OF MRS. CHRISLEY.

11          MR. LITTLE:  NO, YOUR HONOR.

12          THE COURT:  OKAY.  THEN THE COURT DOES ADOPT THOSE

13     CALCULATIONS.  AND I'LL RE-ADOPT THE FACTUAL FINDINGS OF THE

14     PRESENTENCE INVESTIGATION REPORT.  AND WE WILL MOVE NOW TO

15     REASONABLE SENTENCE PURSUANT TO 18 U.S.C. SECTION 3553(A).

16          BEFORE WE PROCEED WITH ANY SENTENCING ARGUMENT, DOES

17     EITHER SIDE HAVE ANY WITNESSES TO CALL TO TESTIFY TODAY, ANY

18     ADDITIONAL STATEMENTS TO BE READ INTO THE RECORD, OR ANYTHING

19     OF THAT NATURE, GOVERNMENT?

20          MS. PETERS:  WE DON'T, YOUR HONOR.

21          THE COURT:  DEFENSE.

22          MR. LITTLE:  WE DON'T, YOUR HONOR.  BUT I WOULD ASK

23     THAT MS. CHRISLEY BE ALLOWED TO ALLOCUTE BEFORE THE COURT

24     RENDERS SENTENCE.

25          THE COURT:  CERTAINLY.

1          ALL RIGHT.  THEN WE WILL PROCEED TO SENTENCING

2     ARGUMENT.  I WILL FIRST HEAR FROM THE GOVERNMENT.  AFTERWARDS,

3     I WILL HEAR FROM THE DEFENSE.  AFTER THAT, I WILL ALLOW MS.

4     CHRISLEY TO ALLOCUTE.  AND AFTER THAT I WILL IMPOSE SENTENCE.

5          GOVERNMENT.

6          MS. PETERS:  YES, YOUR HONOR.

7          YOUR HONOR, THE UNITED STATES URGES THIS COURT TO

8     IMPOSE A SENTENCE OF 84 MONTHS OF IMPRISONMENT, WHICH IS A

9     WITHIN-GUIDELINE SENTENCE, THE SAME SENTENCE THAT THIS COURT

10    IMPOSED AT THE FIRST SENTENCING.

11         WE ASK THAT THE COURT IMPOSE THIS SENTENCE FOR ALL OF

12    THE REASONS SET FORTH AT THE FIRST SENTENCING HEARING, BOTH BY

13    THE GOVERNMENT AND BY THE COURT.

14         THERE ARE THREE THINGS THAT I'D LIKE TO COVER THIS

15    MORNING.  FIRST, I'D LIKE TO BRIEFLY MAKE A COUPLE OF COMMENTS

16    ABOUT THE NEW ADJUSTED GUIDELINE RANGE AND HOW THAT IMPACTS IN

17    THE GOVERNMENT'S VIEW A NEW SENTENCE FOR THE DEFENDANT.  I'D

18    THEN LIKE TO ADDRESS THE 3553(A) FACTORS AND WHY AN 84-MONTH

19    SENTENCE IS STILL APPROPRIATE UNDER THOSE.  AND FINALLY I'D

20    LIKE TO ADDRESS SPECIFICALLY SOME OF THE THINGS ADVANCED IN THE

21    DEFENDANT'S SENTENCING MEMORANDUM.

22         SO, FIRST, AS TO THE CHANGES TO THE GUIDELINE RANGE,

23    THERE'S JUST TWO POINTS THAT I WANT TO MAKE FOR THE COURT'S

24    CONSIDERATION.  FIRST, I DO WANT TO PUT INTO CONTEXT THE

25    TWO-LEVEL DROP IN THE TOTAL OFFENSE LEVEL BASED ON THE CHANGE

1    IN THE LOSS AMOUNT.

2         IT IS TRUE, OF COURSE, THAT APPROXIMATELY 12 AND A

3    HALF MILLION OF THE FRAUDULENT LOAN PROCEEDS THAT WERE ISSUED

4    IN THIS CASE WERE RECEIVED BY THE DEFENDANTS PRIOR TO THE FIRST

5    LOAN BEING ISSUED SPECIFICALLY TO THIS DEFENDANT'S COMPANY.

6    HOWEVER, AFTER THAT DATE, WHICH WAS MID-JULY OF 2007, THERE

7    WERE AN ADDITIONAL ALMOST $5 MILLION IN FRAUDULENT LOAN

8    PROCEEDS THAT WERE STILL ISSUED DIRECTLY OR FOR THE BENEFIT OF

9    THIS DEFENDANT.

10         AND I'LL ALSO NOTE THAT THIS CHANGE IN THE GUIDELINE

11    RANGE IS REALLY JUST ABOUT ONE YEAR OF WHEN THE DEFENDANT

12    ENTERED INTO THE BANK FRAUD CONSPIRACY.  INSTEAD OF IN 2006,

13    WE'RE LOOKING AT MID-2007 ON.  THAT WAS STILL A FIVE-YEAR

14    PERIOD WHERE THIS DEFENDANT WAS ACTIVELY PARTICIPATING IN

15    RECEIVING LOANS AND, AS THE COURT WILL RECALL FROM THE TRIAL,

16    DRIVING ALL AROUND TOWN FRANTICALLY MAKING PAYMENTS AND TRYING

17    TO KEEP THE SCHEME GOING AND TO KEEP IT FROM COLLAPSING, ALL

18    ALONG WHILE SHE WAS PERSONALLY BENEFITING FROM THE $36 MILLION

19    OR SO OF FRAUDULENT LOANS THAT HAD BEEN ISSUED TO HER AND HER

20    HUSBAND OR THEIR COMPANIES.

21         THE SECOND THING I'D LIKE TO NOTE ABOUT THE

22    GUIDELINES, YOUR HONOR -- AND THIS IS SOMETHING WE TALKED ABOUT

23    AT THE FIRST SENTENCING, BUT I DO THINK IT'S IMPORTANT TO

24    REMIND THE COURT THAT THE GOVERNMENT TOOK A REALLY CONSERVATIVE

25    APPROACH TO HOW WE CALCULATED THE LOSS AMOUNT IN THIS CASE.

1    AND I KNOW WE'RE BACK HERE ON REMAND ALTOGETHER LOOKING AT A

2    DIFFERENT LOSS AMOUNT.  BUT THERE ARE A FEW THINGS THAT HAVEN'T

3    CHANGED THAT I THINK ARE WORTH NOTING.

4            FIRST, THE GOVERNMENT PROCEEDED ON AN ACTUAL LOSS

5    THEORY, NOT ON AN INTENDED LOSS THEORY, WHICH WOULD HAVE BEEN

6    APPROPRIATE.  I RECALL THE COURT NOTING SEVERAL TIMES AT THE

7    FIRST SENTENCING AND BY RECOGNIZING THAT THE GOVERNMENT HAD

8    PROCEEDED ON A VERY CONSERVATIVE -- TAKEN A VERY CONSERVATIVE

9    APPROACH TO LOSS.  THERE WERE AT LEAST TEN INSTANCES AGENT

10   RYSKOSKI TESTIFIED TO WHERE THE DEFENDANTS SUBMITTED AND

11   ATTEMPTED TO OBTAIN ADDITIONAL FRAUDULENT LOANS THAT WEREN'T

12   ISSUED.  WE DID NOT INCLUDE THOSE IN THE LOSS CALCULATIONS, AND

13   WE HAD TAKEN A VERY CONSERVATIVE APPROACH.

14           ADDITIONALLY, THE GOVERNMENT GAVE CREDIT TO THE

15   DEFENDANTS FOR EVERY PENNY THAT THEY CLAIMED TO HAVE REPAID ON

16   THOSE FRAUDULENT LOANS, EVEN IN THE INSTANCES WHERE THE

17   DEFENDANTS WERE UNABLE TO PROVIDE THE GOVERNMENT WITH

18   DOCUMENTATION CONFIRMING THAT THEY HAD MADE THOSE PAYMENTS AND

19   WHERE THE GOVERNMENT WAS UNABLE TO REACH ITS OWN -- FIND ITS

20   OWN CORROBORATION THAT THOSE PAYMENTS HAD BEEN MADE.  AGAIN,

21   THAT WAS A CONSERVATIVE APPROACH, GIVING THEM EVERY BENEFIT OF

22   THE DOUBT WHEN WE CALCULATED THE ACTUAL LOSS AMOUNT.

23           FINALLY, THERE WERE A COUPLE OF ENHANCEMENTS THAT THE

24   GOVERNMENT COULD HAVE SOUGHT UNDER THE GUIDELINE CALCULATION

25   BUT WE DIDN'T PURSUE AND STILL ARE NOT PURSUING, SUCH AS A

1    TWO-LEVEL ENHANCEMENT FOR THIS DEFENDANT FOR MAKING

2    MISREPRESENTATIONS DURING A BANKRUPTCY PROCEEDING, OF WHICH

3    THERE WAS EVIDENCE.

4            ADDITIONALLY, THE GOVERNMENT COULD HAVE SOUGHT AN

5    ADDITIONAL ENHANCEMENT BASED ON THE NUMBER OF VICTIMS OF

6    FINANCIAL INSTITUTIONS WHO WERE DEFRAUDED BY THIS DEFENDANT.

7    WE DIDN'T SEEK THOSE.  SO THOSE ARE THE TWO THINGS I WANTED TO

8    NOTE, YOUR HONOR, IS, AT THE END OF THE DAY, WE'RE STILL

9    TALKING ABOUT A FIVE-YEAR PERIOD JUST ON THE BANK FRAUD WHERE

10   THIS DEFENDANT WAS INVOLVED EVERY STEP OF THE WAY.  SHE

11   PROFITED FROM ALL OF IT AND IS VERY IN THE MIX FOR ALL OF IT.

12   WE'RE JUST TALKING ABOUT A ONE-YEAR PERIOD AT THE BEGINNING

13   WHERE ABOUT, YOU KNOW, $13 MILLION WHERE SHE WAS NOT YET

14   DIRECTLY INVOLVED IN ANYTHING.

15           NEXT, YOUR HONOR, I'D LIKE TO TALK ABOUT THE 3553(A)

16   FACTORS AND WHY THE SENTENCE OF 84 MONTHS IS STILL APPROPRIATE

17   UNDER THOSE FACTORS.  NOTHING HERE, YOUR HONOR, HAS CHANGED

18   ABOUT THE NATURE -- ABOUT THE NATURE AND THE CIRCUMSTANCES OF

19   THE OFFENSE THAT THIS DEFENDANT COMMITTED.  THE COURT IS WELL

20   AWARE OF THE FACTS, SO I'M NOT GOING TO GO THROUGH THEM ALL.

21           THE COURT SAT THROUGH TRIAL AND HEARD EVERYTHING, BUT

22   WHAT ULTIMATELY HAPPENED IS THAT THIS DEFENDANT AND HER HUSBAND

23   BUILT AN ENTIRE EMPIRE BASED ON GREED.  WHEN THEY WERE

24   COMMITTING THIS REALLY EXPANSIVE BANK FRAUD SCHEME, THEY WERE

25   ALREADY EXCEPTIONALLY WEALTHY.  AT TIMES DURING THEIR BANK

1  FRAUD THEY HAD A LEGITIMATE MONTHLY INCOME STREAM THROUGH THEIR

2  REAL ESTATE BUSINESSES OF $600,000 A MONTH OF LEGITIMATE

3  INCOME, AND THAT WASN'T ENOUGH FOR THEM.  THAT'S WHEN THEY WENT

4  OUT AND BEGAN COMMITTING THIS $36 MILLION BANK FRAUD SCHEME.

5          TO THIS DAY, THEY CONTINUE TO BLAME OTHER PEOPLE AND

6  NOT TAKE RESPONSIBILITY FOR THE CONDUCT THAT THEY COMMITTED.

7          THIS DEFENDANT WENT ON, AFTER THE BANK FRAUD SCHEME

8  COLLAPSED IN 2012, TO COMMIT A SERIES OF OTHER CRIMES OVER THE

9  NEXT SIX YEARS, MEANING THAT, ALTOGETHER, WE ARE TALKING ABOUT

10 MORE THAN A DECADE WHERE NEARLY EVERYTHING THAT THIS DEFENDANT

11 TOUCHED WAS FRAUDULENT.  AND THAT CAME THROUGH VERY CLEARLY AT

12 TRIAL.

13         THIS DEFENDANT COMMITTED WIRE FRAUD ON NUMEROUS

14 OCCASIONS, THEN WENT ON TO COMMIT TAX EVASION, WHILE MAKING

15 MILLIONS OF DOLLARS THROUGH THEIR REALITY TV SHOW, EVEN WHEN

16 THEY KNEW THAT THEY WERE UNDER INVESTIGATION FOR THE BANK

17 FRAUD.  ULTIMATELY, WHEN THIS INVESTIGATION WAS BROUGHT TO

18 THEIR ATTENTION, THIS DEFENDANT WENT ON TO COMMIT OBSTRUCTION

19 OF JUSTICE BY CREATING A SHAM DOCUMENT TRYING TO GET AWAY WITH

20 THE TAX EVASION AND SUBMITTING IT TO THE GRAND JURY WITH A

21 SIGNATURE THAT THAT DOCUMENT WAS A LEGITIMATE DOCUMENT WHEN SHE

22 KNEW, OF COURSE, THAT IT WASN'T.  SHE WAS CONVICTED OF ALL OF

23 THOSE CRIMES.

24         THE COURT NOTED AT SENTENCING, RIGHTFULLY SO, THAT

25 NOT ALL OF THE FRAUD THAT THIS DEFENDANT COMMITTED WAS EVEN

1   INCLUDED IN THE INDICTMENT.  SOME ADDITIONAL FRAUD, EVIDENCE OF

2   FRAUD CAME OUT THROUGH 404(B) EVIDENCE.  WE SAW INSTANCES WHERE

3   THIS DEFENDANT WAS CUTTING AND PASTING DOCUMENTS LEFT AND

4   RIGHT, EVEN DEFRAUDING HER OWN NETWORK PRODUCTION COMPANY, TO

5   GET A COUPLE HUNDRED DOLLARS ON AN EXTRA REIMBURSEMENT, OR AN

6   EXTRA PLANE FLIGHT THAT THEY WEREN'T ENTITLED TO.  EVEN, AT

7   TIMES, SHE AND HER HUSBAND WOULD STIFF CONTRACTORS WHO HAD

8   PERFORMED WORK FOR THEM, AND THEY REFUSED TO PAY THEM AND WOULD

9   MAKE UP EXCUSES OVER AND OVER TO AVOID PAYING THE DEBTS THAT

10  THEY HAD INCURRED BASED ON SERVICES THAT THEY HAD ASKED FOR AND

11  THAT HAD BEEN PERFORMED.

12          THIS DEFENDANT AND HER CODEFENDANT LIED AND

13  MANIPULATED THEIR OWN FAMILY MEMBERS AND LOVED ONES AT TIMES.

14  THEY -- THIS DEFENDANT USED HER MOTHER-IN-LAW AND TOOK HER TO

15  THE BANK AS AN OVERT ACT IN THE TAX EVASION TRANSFERRING THE

16  ENTIRE FAMILY COMPANY TO HER MOTHER-IN-LAW'S NAME.  THEY PUT

17  HER ON THE STAND AT TRIAL TO LIE ABOUT THAT INCIDENT.  AND THIS

18  DEFENDANT ALSO USED HER OWN MOTHER'S CREDIT REPORT, CUTTING AND

19  PASTING IT AS PART OF THE WIRE FRAUD IN ORDER TO GET A LUXURY

20  RENTAL PROPERTY OUT IN CALIFORNIA AT ONE TIME.

21          AND, FINALLY, YOUR HONOR, THIS DEFENDANT WAS NO

22  WALLFLOWER DURING THESE CRIMES.  THIS COURT HAS ALREADY DENIED

23  HER A MINOR ROLE REDUCTION, AND RIGHTFULLY SO, BECAUSE SHE WAS

24  A PART -- A CORE PART OF THESE CRIMES THAT WERE COMMITTED OVER

25  A DECADE PERIOD OF TIME.

1    THE COURT CITED -- THE WORDS THAT THE COURT USED AT

2    THE FIRST SENTENCING WERE THAT THESE CRIMES WERE FUELED BY

3    EGREGIOUS GREED.  THAT IS WHAT CAUSED THESE DEFENDANTS TO DO

4    WHAT THEY DID, WAS EGREGIOUS GREED.  AND THAT IS WHAT HAS

5    BROUGHT US HERE TODAY.

6    NEXT, YOUR HONOR, I'LL NOTE THAT NOTHING HAS CHANGED

7    ABOUT THE NEED FOR THE SENTENCE TO REFLECT THE SERIOUSNESS OF

8    THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE

9    JUST PUNISHMENT FOR THIS DEFENDANT'S CRIMES.  TO DATE -- AND

10   MAYBE WE'LL HEAR SOMETHING DIFFERENT TODAY -- BUT TO DATE, YOUR

11   HONOR, THIS DEFENDANT HAS TAKEN NO RESPONSIBILITY, NO

12   ACCEPTANCE OF RESPONSIBILITY FOR THE CRIMES THAT SHE COMMITTED.

13   SHE HAS NEVER SHOWN REMORSE.  SHE'S NEVER ADMITTED ANY

14   WRONGDOING.

15   AND AT HER FIRST SENTENCING, WHEN SHE STOOD UP TO

16   ALLOCUTE, ALL THAT SHE DID WAS LIST OFF A NUMBER OF REASONS IN

17   AN ATTEMPT TO GET THIS COURT TO ALLOW HER TO EITHER STAY HOME

18   OR TO DELAY HER SENTENCE.  SHE HAS NEVER ONCE APOLOGIZED.

19   SHE'S NEVER ONCE ADMITTED ANY WRONGDOING.  AND I THINK THAT WAS

20   VERY IMPORTANT TO THIS COURT IN ANNOUNCING THAT FIRST SENTENCE.

21   THE COURT SAID THAT, I'VE NEVER REALLY HEARD ANY ADMISSION TO

22   ANY WRONGDOING OR ANY REMORSE AT ALL THROUGHOUT THIS ENTIRE

23   PROCESS.  NONE OF THOSE THINGS HAVE CHANGED, YOUR HONOR, TO

24   DATE.

25   FINALLY, A NOTE ABOUT DETERRENCE.  THERE'S NO

1  DISCUSSION IN THE DEFENDANT'S LATEST SENTENCING MEMORANDUM

2  ABOUT GENERAL DETERRENCE.  BUT I DO WANT TO JUST NOTE FOR THE

3  COURT, AS WE DID LAST TIME, THAT THE ELEVENTH CIRCUIT HAS

4  RECENTLY EMPHASIZED THAT WHITE COLLAR CASES AND WHITE COLLAR

5  FRAUD ARE VERY IMPORTANT CASES FOR SENDING A MESSAGE OF GENERAL

6  DETERRENCE TO THE COMMUNITY.  THAT'S BEEN DONE MOST RECENTLY IN

7  UNITED STATES VERSUS HOWARD, IN 2022, AND IN UNITED STATES

8  VERSUS OUDOMISINE IN 2023.

9         IN SUM, YOUR HONOR, AS TO THE 3553(A) FACTORS AND THE

10  CHANGED GUIDELINE RANGE, NOTHING ABOUT THOSE THINGS HAS CHANGED

11  THAT WOULD COUNSEL IN FAVOR OF IMPOSING A SENTENCE BELOW 84

12  MONTHS, WHICH IS WITHIN THE ADJUSTED GUIDELINE RANGE.

13         FINALLY, I'D LIKE TO RESPOND SPECIFICALLY TO SOME OF

14  THE ARGUMENTS ADVANCED BY THE DEFENDANT IN HER SENTENCING

15  MEMORANDUM.  FIRST, ABOUT PETER TARANTINO.  DEFENDANT ARGUES

16  THAT THE GOVERNMENT IS SOMEHOW BEING INCONSISTENT BY NOT

17  AGREEING TO RECOMMEND A LOWER SENTENCE OR A BELOW-GUIDELINE

18  SENTENCE BECAUSE THE GOVERNMENT DIDN'T OPPOSE AN ADJUSTMENT

19  SENTENCE FOR PETER TARANTINO IN LIGHT OF THE TWO-POINT ZERO

20  OFFENDER REDUCTION.

21         I WILL NOTE THAT WHAT THE GOVERNMENT DIDN'T OPPOSE OR

22  AGREE TO WAS A THREE-MONTH SENTENCE REDUCTION FROM 36 TO 33

23  MONTHS.  THIRTY-THREE MONTHS IS THE LOW END OF HIS ADJUSTED

24  GUIDELINE RANGE AFTER THE ZERO POINT OFFENDER ADJUSTMENT IS

25  APPLIED.  HE GOT THAT MEANS A WITHIN-GUIDELINE SENTENCE AFTER

1    THE TWO-POINT ZERO OFFENDER REDUCTION.

2              WE'RE ASKING FOR THE SAME THING HERE, A

3    WITHIN-GUIDELINE SENTENCE AFTER THE TWO-POINT ZERO OFFENDER

4    INSTRUCTION -- ZERO OFFENDER REDUCTION.

5              AGAIN, TARANTINO GOT A LOW-END SENTENCE WITHIN HIS

6    ADJUSTED RANGE.  WHAT WE'RE URGING THE COURT TO DO HERE THAT IT

7    DID LAST TIME WOULD BE A SENTENCE JUST SIX MONTHS ABOVE THIS

8    DEFENDANT'S LOW-END RANGE.  THAT'S NOT EVEN A MID-GUIDELINE

9    RANGE.  IT'S MERELY A LOW-END RANGE, SIX MONTHS ABOVE THE LOW

10   END.  AND WE THINK THAT'S APPROPRIATE.

11             THIS DEFENDANT IS NOT SIMILARLY SITUATED WITH PETER

12   TARANTINO AT ALL.  PETER TARANTINO GOT UP AT SENTENCING.  HE

13   APOLOGIZED.  HE TOOK RESPONSIBILITY FOR HIS CRIMES AND HIS

14   ACTIONS.  AND WE BELIEVED THAT A LOW-END SENTENCE AFTER HIS

15   ADJUSTMENT WAS APPROPRIATE.

16             THIS DEFENDANT HAS NOT DONE ANY OF THOSE THINGS.

17   AND, CERTAINLY, TO IMPOSE A BELOW-GUIDELINE SENTENCE WHERE

18   TARANTINO HAS GOTTEN A LOW-END SENTENCE WOULD BE UNJUST IN OUR

19   VIEW.

20             NEXT, YOUR HONOR, THE DEFENDANT IN HER MEMORANDUM AND

21   IN THE LETTERS SUBMITTED TO THE COURT SPENDS A GREAT DEAL OF

22   TIME TALKING ABOUT THE FACT THAT HER CHILDREN AT HOME ARE

23   UNWELL AND THAT HER PARENTS, WHO ARE 70 YEARS OLD, ARE

24   SUFFERING IN HER ABSENCE AS SHE HAS SERVED TIME.

25             WE TALKED ABOUT THIS THE FIRST TIME AT SENTENCING,

1    YOUR HONOR.  AND THINGS ARE UNPLEASANT.  THEY ARE TERRIBLE IN

2    THAT THEY IMPACT ENTIRE FAMILY SYSTEMS.  IT'S A TRAGEDY THAT

3    HAPPENS.  BUT IT IS ALSO A NATURAL CONSEQUENCE OF THIS

4    DEFENDANT'S CHOICES.

5             I HAVE SYMPATHY FOR THE FAMILY.  I DO.  AND I KNOW

6    THE COURT HAS EXPRESSED SYMPATHY AS WELL, BUT WE ARE HERE

7    BECAUSE OF THE CHOICES THAT THIS DEFENDANT MADE WHEN SHE

8    COMMITTED THE CRIMES THAT SHE DID.  AND THIS COURT NOTED THAT,

9    ULTIMATELY, THAT BURDEN OF GOING TO PRISON HAS TO BE SHOULDERED

10   BY THE PERSON WHO WAS CONVICTED, BECAUSE THAT'S THE PERSON WHO

11   DID NOT STOP TO THINK ABOUT THEIR CONDUCT AND HOW PUNISHMENT

12   FOR THAT CONDUCT MIGHT AFFECT THAT CHILD OR CHILDREN.

13            AND THE GOVERNMENT AGREES WITH WHAT THIS COURT HAS

14   ALREADY SAID.

15            THIS COURT HAS ALREADY CONSIDERED THE FAMILY IMPACT

16   THAT AN 84-MONTH SENTENCE WILL HAVE ON THE FAMILY.  AND IN

17   CONSIDERING THAT, THIS COURT DID GRANT A DOWNWARD VARIANCE FROM

18   THE ORIGINAL SENTENCING GUIDELINE RANGE.

19            WHEN THIS COURT IMPOSED THE 84-MONTH SENTENCE, IT

20   CITED FOUR THINGS IN CONSIDERATION OF WHY IT GAVE A DOWNWARD

21   VARIANCE:  THE DEFENDANT'S AGE, HER HEALTH, HER TWO MINOR

22   CHILDREN AT HOME, AND BEING A CARETAKER FOR HER ELDERLY

23   PARENTS.  THIS COURT KNEW, EVERYONE KNEW THAT THIS WOULD BE A

24   DIFFICULT SITUATION AND A DIFFICULT TIME FOR THE MINOR

25   CHILDREN.  AND IT HAS BEEN.  AND THAT'S NO SURPRISE.  IT IS

1  UNFORTUNATE, BUT WE KNEW THIS WOULD HAPPEN.  AND THERE'S

2  NOTHING NEW OR DIFFERENT ABOUT THAT THAT SHOULD COUNSEL IN

3  FAVOR OF A LOWER SENTENCE.  THIS IS A NATURAL CONSEQUENCE OF

4  THIS DEFENDANT'S CRIMINAL CHOICES.

5          I'LL ALSO NOTE, YOUR HONOR, THAT WAS, OF COURSE, DONE

6  THROUGH VARIANCE.  AND I'LL NOTE THAT THE GUIDELINES DISFAVOR A

7  DOWNWARD DEPARTURE BECAUSE OF FAMILY CIRCUMSTANCES UNLESS THEY

8  ARE TRULY EXTRAORDINARY.  AND THAT COMES FROM SECTION 5H1.6 OF

9  THE GUIDELINES.  THE POLICY STATEMENT STATES THAT, IN

10 SENTENCING A DEFENDANT CONVICTED OF AN OFFENSE, FAMILY TIES AND

11 RESPONSIBILITIES ARE NOT ORDINARILY RELEVANT IN DETERMINING

12 WHETHER A DEPARTURE MAY BE WARRANTED.  FOR EXAMPLE, THE FACT

13 THAT THE DEFENDANT'S FAMILY MIGHT INCUR SOME DEGREE OF

14 FINANCIAL HARDSHIP OR SUFFER TO SOME EXTENT FROM THE ABSENCE OF

15 A PARENT THROUGH INCARCERATION IS NOT IN ITSELF SUFFICIENT AS A

16 BASIS FOR DEPARTURE BECAUSE SUCH HARDSHIP OR SUFFERING IS OF A

17 SORT ORDINARILY INCIDENT TO INCARCERATION.

18         SO WE KNOW THAT THIS COURT HAS ALREADY CONSIDERED THE

19 FACT THAT THERE ARE MINOR KIDS.  THAT WAS BAKED INTO THE

20 COURT'S DECISION TO IMPOSE THE 84-MONTH SENTENCE.  AND WE WOULD

21 URGE THE COURT THAT A DOWNWARD DEPARTURE OR A VARIANCE BEYOND

22 THAT 84 MONTHS IS NOT NECESSARY.  THIS IS WHAT WE EXPECTED TO

23 HAPPEN, AND HERE WE ARE.

24         NEXT, YOUR HONOR, THE DEFENDANT'S SENTENCING

25 MEMORANDUM URGES THE COURT TO CONSIDER THE COLLATERAL

1    CONSEQUENCES THAT THIS DEFENDANT WILL SUFFER AS A RESULT OF HER

2    FELONY CONVICTIONS AND AS A RESULT OF HER SENTENCE.  AND THE

3    DEFENDANT HAS CITED A NUMBER OF OUT-OF-CIRCUIT CASES AND

4    OUT-OF-CIRCUIT DISTRICT CASES.  THOSE ARE INCONSISTENT WITH THE

5    LAW IN THE ELEVENTH CIRCUIT.

6              IN UNITED STATES VERSUS HOWARD, A CASE FROM 2022, THE

7    ELEVENTH CIRCUIT DIRECTED THAT IT CAN BE AN ABUSE OF DISCRETION

8    AND OFTEN IS ABUSE OF DISCRETION TO CONSIDER COLLATERAL

9    CONSEQUENCES WITH A FACT THAT A DEFENDANT IS GOING TO BE TAGGED

10   AS A FELON FOR THE REST OF HER LIFE MOVING FORWARD.  THAT IS AN

11   ABUSE OF DISCRETION, OR CAN BE AN ABUSE OF DISCRETION TO

12   CONSIDER THAT IN GIVING A LOWER SENTENCE OR A BREAK TO THE

13   DEFENDANT.  AND THAT'S BECAUSE EVERYONE WHO IS CONVICTED OF A

14   FELONY IS SIMILARLY SITUATED.  WHAT THE HOWARD COURT SAID IS

15   THIS:  A FACTOR THAT EXISTS IN MORE THAN 19 OUT OF 20 CASES IS

16   NOT A PROPER BASIS FOR VARYING UPWARD OR DOWNWARD FROM THE

17   GUIDELINE RANGE.  IT IS AN EXPECTED, ORDINARY, EVERYDAY FACT OF

18   LIFE FOR SENTENCE -- FOR DEFENDANTS SENTENCED UNDER THE

19   GUIDELINES.

20             SO THE FACT THAT THIS DEFENDANT WILL CARRY AROUND A

21   FELONY CONVICTION WITH HER, THAT IT MAY IMPACT HER WORK, THAT

22   IT MAY IMPACT HER JOB PROSPECTS, THAT'S SOMETHING THAT EVERY

23   FELON IN THE COUNTRY FACES, OF COURSE, WHEN THEY COME OUT OF A

24   SENTENCE.  AND SO IT'S NOT A PROPER BASIS FOR THIS COURT TO

25   CONSIDER IN IMPOSING A LIGHTER OR LESSER SENTENCE, AS SUGGESTED

18

1    BY THE DEFENDANT.

2            SIMILARLY, LOSS OF PROFESSIONAL REPUTATION IS ALSO

3    NOT A BASIS FOR A DOWNWARD VARIANCE.  THAT'S ALSO FROM THE

4    HOWARD COURT.

5            LIKEWISE, ECONOMIC STATUS IS AN IMPROPER -- OR AT

6    LEAST, AT A MINIMUM, A HIGHLY QUESTIONABLE REASON FOR A BASIS

7    FOR A DOWNWARD VARIANCE, WHICH IS IMPLIED IN THE DEFENDANT'S

8    MEMO.  THE GUIDELINES DON'T AUTHORIZE ANY SORT OF SPECIAL

9    SENTENCING DISCOUNTS ON ACCOUNT OF ECONOMIC STATUS OR SOCIAL

10   STATUS.  AND THAT WAS RECOGNIZED IN UNITED STATES VERSUS

11   PULLMAN IN 2013 IN A PUBLISHED CASE.

12           FINALLY, YOUR HONOR, THE DEFENDANT NOTES IN HER

13   MEMORANDUM THAT SHE'S DONE WELL IN PRISON SO FAR.  THAT IS A

14   GOOD THING.  BUT THE DEFENDANT SHOULD NOT BE REWARDED FOR DOING

15   WHAT SHE'S SUPPOSED TO DO BEYOND RECEIVING GOOD-TIME CREDIT AS

16   A RESULT OF HER GOOD BEHAVIOR, WHICH SHE IS EARNING AS WE

17   SPEAK.

18           BUT THE FACT THAT SHE HAS DONE WELL FOR 20 MONTHS IN

19   CUSTODY DOES NOT CANCEL OUT THE DECADE-LONG STRING OF FRAUD

20   AFTER FRAUD AFTER FRAUD THAT SHE PERPETRATED AGAINST THE

21   COMMUNITY AND STILL HASN'T APOLOGIZED FOR.

22           THEY CLAIM IN THEIR -- THE DEFENDANT CLAIMS IN HER

23   MEMO THAT THE CRIME SHE WAS CONVICTED OF IS AN ABERRATION.  I

24   THINK THAT'S A BIT OF A MISSTATEMENT, BECAUSE WE'RE NOT TALKING

25   ABOUT A ONE-TIME CRIME ON A ONE-TIME DAY OR A ONE-TIME

1    INCIDENT.  THIS WASN'T AN ABERRATION, YOUR HONOR.  THIS WAS AN

2    11-YEAR JOURNEY OF FRAUD AFTER FRAUD AFTER FRAUD.  EVEN AFTER

3    THE DEFENDANT KNEW THAT SHE WAS UNDER INVESTIGATION FOR BANK

4    FRAUD, SHE WENT ON TO COMMIT AT LEAST THREE MORE TYPES OF

5    FRAUD, CULMINATING AND TRYING TO DEFRAUD THIS COURT AND THE

6    GRAND JURY WHO WAS INVESTIGATING HER.

7             TWENTY MONTHS IN PRISON OF GOOD TIME DOES NOT CANCEL

8    OUT 11 YEARS OF FRAUDULENT CONDUCT.  TO DATE, THERE HAS BEEN NO

9    ACKNOWLEDGMENT BY HER OF THE SERIOUSNESS OF HER CRIMES THAT

10   WENT WELL BEYOND BANK FRAUD AND TO VARIOUS OTHER TYPES OF

11   FRAUD.  THERE'S BEEN NO ACCEPTANCE OF RESPONSIBILITY AND NO

12   REMORSE.

13            FOR THOSE REASONS, YOUR HONOR, WE WOULD URGE THE

14   COURT THAT AN 84-MONTH SENTENCE, WHICH IS STILL NEAR THE LOW

15   END OF THE NEW ADJUSTED GUIDELINE RANGE, IS AN APPROPRIATE AND

16   NECESSARY SENTENCE TO ACHIEVE THE PURPOSES SET OUT IN SECTION

17   3553(A).

18            THANK YOU.

19            THE COURT:  THANK YOU.

20            MR. LITTLE?

21            MR. LITTLE:  GOOD MORNING, YOUR HONOR.

22            THE COURT:  GOOD MORNING, SIR.

23            MR. LITTLE:  I THINK IT'S IMPORTANT TO NOTE AT THE

24   OUTSET THAT THIS IS THE FIRST TIME YOU ARE SEEING JULIE

25   CHRISLEY ALONE IN THIS COURTROOM.  I KNOW DURING THE LAST

1    SENTENCING THAT THE COURT TAKES VERY SERIOUSLY THE OBLIGATION

2    TO SENTENCE EACH DEFENDANT INDIVIDUALLY BASED ON THEIR

3    INDIVIDUAL CIRCUMSTANCES.  BUT THE REALITY OF MUCH OF EVEN WHAT

4    YOU HEARD TODAY WAS THEY, COLLECTIVE, JULIE AND HER HUSBAND

5    TODD.  AND I THINK SO MUCH ABOUT THIS CASE ALLOWS THE

6    GOVERNMENT TO CLUMP THEM TOGETHER IN WAYS THAT REALLY AREN'T

7    SUPPORTED BY THE RECORD.

8            AND I RAISE THAT, BECAUSE I FELT A LITTLE BIT LIKE,

9    I'M GOING TO HAVE TO SHADOWBOX UP HERE BASED ON WHAT THE

10   GOVERNMENT SAID.  THE FIRST THING THAT THEY CAME UP HERE AND

11   TOLD YOU WAS A WHOLE SERIES OF THINGS THEY COULD HAVE DONE:  WE

12   COULD HAVE PROVEN THIS; THE GUIDELINES COULD HAVE BEEN HIGHER.

13   BUT THEY ARE NOT.  THEY HAVE THE BURDEN TO TRY TO DO THAT IF

14   THEY WANT TO.

15           BUT THEY SEEM TO BE SUGGESTING THEY SHOULD GET THE

16   BENEFIT OF THE THINGS THEY HAVEN'T PROVEN.  ON APPEAL WHEN THEY

17   ARGUED THE QUESTION OF JULIE'S LIKE SUBSTANTIAL INVOLVEMENT IN

18   THE CONSPIRACY, THEY POINTED TO ONE THING.  AND THAT WAS A

19   SINGLE SENTENCE AND MR. BRADDOCK'S TESTIMONY WHERE HE SAID,

20   YES, JULIE AND TODD HELPED ME IN THIS CONSPIRACY.

21           YOU WERE HERE FOR THREE WEEKS -- I WASN'T -- TO SIT

22   THROUGH THAT VERY LONG TRIAL.  I KNOW FROM READING THAT

23   TRANSCRIPT THAT, OF THE MANY DAYS OF TESTIMONY, IF YOU COMPRESS

24   THE TIME WHEN JULIE WAS DISCUSSED, IT WOULD HAVE BEEN ABOUT A

25   DAY AND A HALF.  SO I'M NOT GOING TO ARGUE HERE THAT SHE WASN'T

1    FOUND GUILTY OF THESE CRIMES AND SHE WASN'T RESPONSIBLE FOR A

2    SERIOUS LOSS TO THESE FINANCIAL INSTITUTIONS.  SHE WAS.  BUT

3    SHE'S VERY DIFFERENTLY SITUATED IN THE CIRCUMSTANCES THE

4    GOVERNMENT SAYS THEY COULD PROVE AND REALLY AREN'T IN THE

5    RECORD AT THE SAME LEVEL.

6        WHEN THE GOVERNMENT TELLS YOU THAT NOTHING HAS

7    CHANGED, THAT'S JUST NOT TRUE.  IT IS A SUBSTANTIAL DIFFERENCE

8    FROM THE DAY THE COURT CAME IN FOR THE LAST SENTENCING IN

9    NOVEMBER OF '22, THAT THE GUIDELINE RANGE UNDER THE PSR, $30

10   MILLION.  THE COURT'S ULTIMATE DETERMINATION, THE GOVERNMENT'S

11   ARGUMENT IT SHOULD BE $17 MILLION AND TODAY WE'RE AT FOUR AND A

12   HALF MILLION DOLLARS, ALL OF THE 3553(A) FACTORS, ALL OF THE

13   THINGS ABOUT DETERRENCE, GENERAL DETERRENCE, THOSE ARE VASTLY

14   DIFFERENT IN A LOSS THAT IS $4 MILLION VERSUS A LOSS THAT IS 30

15   MILLION OR 70 MILLION, AS THE COURT SORT OF OPERATED WHEN THE

16   SENTENCING TOOK PLACE LAST TIME.  SO I DON'T THINK IT'S FAIR TO

17   SAY THAT THINGS AREN'T DIFFERENT.

18        THE OTHER THING THAT'S DIFFERENT IS, THE SENTENCING

19   COMMISSION HAS NOW ADVISED COURTS THROUGH THE ZERO POINT

20   OFFENDER GUIDELINE TO TAKE SERIOUSLY THE FACT THAT INDIVIDUALS

21   WITH NO TRUE CRIMINAL HISTORY AND NONE OF THE AGGRAVATING

22   FACTORS WHICH WOULD EXCLUDE YOU FROM THAT HAVE A VASTLY

23   DIFFERENT ABILITY TO REINTEGRATE INTO SOCIETY, TO NOT COMMIT

24   MORE CRIMES.  AND IT'S BASED ON THOSE STATISTICS ABOUT THEIR

25   SORT OF GOOD BEHAVIOR AFTERWARDS, PEOPLE SIMILARLY SITUATED,

1    THAT THEY BELIEVE THAT TWO-POINT GUIDELINE SHOULD BE IN PLACE.

2    AND SO THOSE TWO THINGS TOGETHER DO TAKE US IN A VERY DIFFERENT

3    WORLD FROM THE GUIDELINES THE COURT WAS LOOKING AT BEFORE, THE

4    GUIDELINES THE COURT IS LOOKING AT NOW.

5              I WON'T ARGUE THAT THERE ARE 15 DIFFERENT THINGS THAT

6    ARE DIFFERENT, BUT THOSE TWO THINGS ARE DRAMATICALLY DIFFERENT.

7    AND WE THINK BECAUSE OF THE -- THEIR EFFECT ON 3553, THE COURT

8    SHOULD GIVE THEM SOME CREDIT.

9              I DON'T WANT -- I ALSO WANT TO SORT OF CLARIFY WHAT

10   WE'RE ARGUING, WHAT WE'RE NOT ARGUING.  I'M NOT FOR A MINUTE

11   TELLING YOU THE COURT DIDN'T TAKE INTO CONSIDERATION THE ISSUE

12   OF CHILDREN AND FAMILY.  IT DID.  OUR ONLY POINT IS THAT THAT

13   HAS NOT CHANGED IN THE INTERVENING TWO YEARS.  AND I'M NOT

14   ARGUING FOR A MINUTE THAT SHE SHOULD SOMEHOW GET OUT OF JAIL

15   BECAUSE SHE WAS GOOD IN PRISON FOR 20 MONTHS.

16             BUT SHE IS NOT JUST PARTICIPATING IN GOOD TIME.  I'VE

17   NEVER SEEN A DEFENDANT WITH 70 PAGES OF CERTIFICATES IN 20

18   MONTHS.  HER TRANSCRIPT FROM BOP IS THE MOST SORT OF IMPRESSIVE

19   LIST OF THINGS.  I DON'T THINK THERE'S A PROGRAM AT LEXINGTON,

20   WHICH IS ONE OF THE OLDEST AND MORE ESTABLISHED BOP

21   INSTITUTIONS, THAT SHE HAS NOT YET TAKEN IN THOSE TWO YEARS.

22   THEY'VE TRUSTED HER WITH MULTIPLE DIFFERENT JOBS AND

23   EMPLOYMENT.  SHE HAS NOT A HINT OF A RECORD ON ANY SORT OF

24   DISCIPLINARY ISSUE.  AND THAT MATTERS, BECAUSE THE COURT HAS TO

25   CONSIDER WHAT THIS PARTICULAR DEFENDANT, WHAT LEVEL OF

1    INCARCERATION IS NECESSARY FOR REHABILITATION AND FOR

2    RETRIBUTION.  AND BY SHOWING THAT SHE IS NOT JUST THE AVERAGE

3    INMATE, BUT ABOVE AVERAGE, THE COURT CAN TAKE THAT INTO

4    CONSIDERATION IN THINKING ABOUT WHAT IS NEEDED AT THE TOP END

5    OF A DIFFERENCE BETWEEN, LET'S SAY, 60 MONTHS OR 84.  THERE IS

6    NO FUNCTIONAL DIFFERENCE FOR GENERAL DETERRENCE, ESPECIALLY

7    WITH THE REDUCTION IN THE LOSS AMOUNT, FOR PEOPLE IN THE WORLD

8    SEEING 60 MONTHS VERSUS 84 MONTHS.  THERE IS A VAST DIFFERENCE

9    IN THE LIFE OF JULIE CHRISLEY AND HER FAMILY AT THOSE TWO

10   AMOUNTS.

11         AND I DON'T THINK THERE'S ANY EVIDENCE IN THE RECORD

12   TO SUGGEST THAT SHE SOMEHOW IS GOING TO BE MORE REHABILITATED

13   OR LESS LIKELY TO RE-OFFEND AT 84 MONTHS THAN SHE WOULD BE AT

14   60.  AND SO WE RAISE THOSE NOT TO SAY THAT YOU SHOULD SOMEHOW,

15   YOU KNOW, APPLAUD HER AND LET HER OUT, BUT IT GOES DIRECTLY TO

16   FACTORS THIS COURT MUST CONSIDER UNDER 3553(A).

17         AS TO OUR SENTENCING MEMORANDUM, WE THINK,

18   ULTIMATELY, THERE'S ALSO THE IMPORT OF MAKING -- OF TAKING INTO

19   ACCOUNT THAT THE CIRCUMSTANCES OF LOSS WHICH DRIVES THE

20   GUIDELINES, WHICH IS THE PRIMARY BASIS OF A CRIME LIKE THIS, IS

21   SUBSTANTIALLY REDUCED AND NOT REDUCING A SENTENCE AND THE COURT

22   IN ANY SORT OF CORRESPONDING AMOUNT I THINK WOULD NOT PROMOTE

23   RESPECT FOR THE LAW.  IT WOULD SUGGEST THAT THE THINGS THAT

24   HAVE CHANGED ARE NOT WORTHY OF IMPORT UNDER 3553(A).  AND WE

25   THINK THAT'S EXACTLY WHAT THAT STATUTE IS MEANT TO PROTECT.

24

1          LASTLY, I HEARD A LOT FROM THE GOVERNMENT ABOUT THE

2    LACK OF REMORSE.  YOU'RE GOING TO GET TO HEAR IN A MOMENT FROM

3    MS. CHRISLEY.  I THINK YOU WILL HEAR A DIFFERENT STORY.  AND

4    THAT'S NOT SURPRISING.  TIME HAS A WAY OF ALLOWING YOU TO

5    REFLECT.  PRISON HAS A WAY OF ALLOWING YOU TO REFLECT.  BUT

6    FROM THE LETTERS, I THINK YOU'LL SEE THAT THIS IS AN

7    ABERRATION.

8          NOW, I UNDERSTAND IT MAY HAVE TAKEN PLACE OVER TIME.

9    BUT YOU DID NOT HEAR THAT SHE WAS COMMITTING CRIMES EVERY DAY.

10   THE TRIAL TESTIMONY WAS VERY DIFFERENT.  THERE WERE SCATTERED

11   OFFENSES OVER A PERIOD OF TIME WHERE SHE MADE DRAMATIC

12   MISTAKES.  AND I'LL LET HER TALK ABOUT THOSE MISTAKES.  BUT IN

13   THE END, THERE'S NOTHING THAT SERVES THIS COURT, THIS COUNTRY,

14   OR THIS CASE FOR MS. CHRISLEY TO SERVE OVER 60 MONTHS IN

15   PRISON.  WE ASK THAT THAT'S WHAT YOU SET THIS NEW SENTENCE.

16          THANK YOU.

17          THE COURT:  BEFORE YOU STEP AWAY, BECAUSE YOU DID

18   MENTION THE STACK OF CERTIFICATES --

19          MR. LITTLE:  YES.

20          THE COURT:  -- THAT WERE PRESENTED TO THE COURT.  AND

21   I DIDN'T KNOW EARLIER THAT I REVIEWED THEM.  SO IT SOUNDS LIKE

22   THERE HAVE BEEN MANY OPPORTUNITIES FOR MS. CHRISLEY TO TAKE

23   ADVANTAGE OF WHILE SHE'S BEEN IN CUSTODY.

24          MR. LITTLE:  OH, YES.

25          THE COURT:  WHICH IS A LITTLE DIFFERENT FROM WHAT I

1    THOUGHT FROM SOME OF THE STUFF I'VE SEEN ABOUT THESE FACILITY

2    CONDITIONS.  BUT IT SOUNDS LIKE SHE'S GOT MANY OPPORTUNITIES TO

3    DO GOOD THINGS.  IS THAT RIGHT?  AND SHE'S AVAILED HERSELF OF

4    THOSE.

5          MR. LITTLE:  WELL, LET ME TALK ABOUT TWO SORT OF

6    DIFFERENT THINGS THERE.

7          THE COURT:  OKAY.

8          MR. LITTLE:  I THINK WITHIN LEXINGTON THERE IS A

9    GENERAL -- AND I THINK BOP RECOGNIZES, THERE ARE SOME HEALTH

10   ISSUES WITH THE FACILITY AND THE CONDITIONS OF THIS FACILITY.

11   I THINK THE PROGRAMMING IS A LITTLE BIT DIFFERENT FROM THAT.

12   THE BOP UNFORTUNATELY AT MOST FACILITIES -- AND LEXINGTON IS AN

13   OLD ONE -- HAS MOLD ISSUES AND HAS JUST GENERAL ENVIRONMENTAL

14   HAZARD ISSUES.  THOSE ARE NOT RELATED TO THE PROGRAMMING THAT

15   IS AVAILABLE AT THOSE FACILITIES.  SO THAT'S VERY DIFFERENT.

16         THE COURT:  AND JUST TO BE CLEAR, NONE OF THAT HAS

17   BEEN RAISED WITH THE COURT TO --

18         MR. LITTLE:  WE'RE NOT ARGUING --

19         THE COURT:  IS THAT CORRECT?

20         MR. LITTLE:  WE ARE NOT ARGUING --

21         THE COURT:  IS THAT CORRECT?

22         MR. LITTLE:  YES.  BUT I WILL SAY THERE IS ONE

23   SPECIFIC PLACE THAT I SHOULD HAVE MENTIONED, BECAUSE IT WAS IN

24   MY NOTES AND I SKIPPED OVER IT.  THERE ARE THE CIRCUMSTANCES OF

25   HER TRANSPORT THAT I THINK THE COURT SHOULD BE AWARE OF.  I'M

1    GOING TO LET HER SPEAK TO IT.  I WAS NOT THE ONE TRANSPORTED.

2    BUT I CAN TELL YOU THAT PARTICULARLY WITH WOMEN IN THE CARE OF

3    THE MARSHALS SERVICE, BECAUSE THE TRANSPORT SYSTEM IS NOT

4    REALLY MADE FOR THEM, HAVE AN INCREDIBLY DIFFICULT TIME AND ARE

5    VASTLY, VASTLY WORSE SITUATED THAN THEY ARE IN A STANDARD

6    PRISON OR OTHERWISE.

7            AND SO I THINK YOU'LL HEAR THAT SHE WAS TRANSPORTED

8    WITH A NUMBER OF MEN IN A WAY THAT SHE WAS TOLD NOT TO EAT OR

9    DRINK FOR MANY HOURS, THAT SHE WOULD HAVE TO GO TO THE BATHROOM

10   TO PASS MEN WHO WOULD LEER, POTENTIALLY THROW THINGS AND

11   OTHERWISE SORT OF INTERFERE WITH HER, THAT SHE WAS HELD IN

12   COLLECT FACILITIES WHERE THERE WAS A GREAT DEAL OF SORT OF

13   THREATS BY THE MALE INMATES AND WHERE SHE WAS KEPT IN THAT JAIL

14   FOR 23 HOURS, FOR WEEKS ON END, WITHOUT ANY ACCESS TO THE

15   OUTDOORS EXCEPT FOR AN HOUR A DAY BECAUSE OF THE TRANSPORT.

16           AND SO AT THE END, WE WILL ASK YOU FOR AN ISSUE ABOUT

17   THAT, NO MATTER WHAT THE COURT DETERMINES, IS TO A FURLOUGH TO

18   LET HER BE RETURNED.  BUT I DON'T WANT TO SAY THAT THERE'S NOT

19   ISSUES WITH THAT.  SHE'LL SPEAK TO THOSE AS WELL.

20           THE COURT:  ALL RIGHT.  WERE THOSE ISSUES ONES THAT I

21   MISSED THAT WERE RAISED WITH THE COURT ABOUT TRANSPORTING?

22   BECAUSE THE LAST THING I SAW IN THE REQUEST TO HAVE HER DO

23   SOMETHING BY ZOOM, WHICH WE PUT BACK ON YOU AND SAID, OKAY,

24   TELL US WHAT WE NEED TO DO, WAS THAT SHE WAS GOING TO BE

25   TRANSPORTED BY VAN.  AND I DON'T THINK THAT THAT WAS ACCURATE.

1           MR. LITTLE:  WE DIDN'T KNOW.

2           THE COURT:  SO YOU DIDN'T KNOW.

3           MR. LITTLE:  NO.  THIS ALL HAPPENED, AND ONCE THEY

4     TRANSPORTED HER, THAT CHANGED.  AND SO WE DIDN'T TAKE HER

5     STRAIGHT DOWN, I THINK, BASED ON THE ORDER THEY GOT FROM THE

6     COURT, THAT'S THE STANDARD SORT OF REMAND WRIT, YOU KNOW, THEY

7     PUT HER THROUGH THE BOP KIND OF SLOW BUS.

8           THE COURT:  WELL, WHERE DID YOU GET THE INFORMATION

9     THAT YOU DID PUT IN YOUR MOTION ABOUT HER BEING TRANSPORTED BY

10    VAN, WHICH OBVIOUSLY WAS NOT --

11          MR. LITTLE:  OH, NO.  SHE WAS TRANSPORTED BY VAN.

12    SHE WENT FROM VAN FROM MEMPHIS TO OKLAHOMA.

13          THE COURT:  I THOUGHT THE MEMO SAID THE ENTIRE TRIP

14    WOULD BE BUT I MAY HAVE MISSED SOMETHING.

15          MR. LITTLE:  THE U.S. MARSHALS SERVICE CAN AND

16    SOMETIMES DOES CONTRACT FOR A STRAIGHT VAN FROM LEXINGTON TO

17    WHEREVER THE COURT IS.  THERE IS A SERVICE THAT THEY CAN DO

18    THAT.  THEY PUT HER THROUGH, I UNDERSTAND, THE STANDARD

19    TRANSPORT SERVICE WHICH FLEW HER TO MEMPHIS, TOOK HER IN A VAN

20    FROM MEMPHIS TO OKLAHOMA CITY, THEN TOOK HER FROM OKLAHOMA CITY

21    TO OUTSIDE ATLANTA TO A DETENTION FACILITY, AND SHE WAS THERE

22    FOR THE LAST FIVE WEEKS UNTIL NOW.

23          THE COURT:  OKAY.  THE STANDARD PROCESS.

24          MR. LITTLE:  YEAH, WHICH IS THE LENGTHY SORT OF ONE

25    THAT I DESCRIBED WITH THE CO-ED ISSUES, WHICH IS A PROBLEM.

1          THE COURT:  YES, SIR.

2          MR. LITTLE:  BUT NONE OF THOSE DID RELATE TO THE

3    SENTENCE.  IT MAY RELATE TO A REQUEST FOR A FURLOUGH TO ALLOW

4    HER TO RETURN TO LEXINGTON, WHICH WE'LL MAKE AT THE END OF THIS

5    HEARING.  BUT WE ARE NOT ASKING FOR REDUCED SENTENCE BECAUSE OF

6    THAT.  I THINK OUR ISSUE WITH HER PARTICIPATION IN PRISON IS,

7    SHE IS AN EXTRAORDINARY INMATE.

8          THE COURT:  YES, SIR.

9          MR. LITTLE:  WHICH IS CONSISTENT WITH HER CHARACTER

10   AND WHAT YOU SEE IN THE LETTERS BOTH FOR THE FIRST SENTENCING

11   AND HERE THAT THAT WOULD BE HER RESPONSE.

12         THE COURT:  YES, SIR.  I APPRECIATE IT.  THANK YOU,

13   MR. LITTLE.

14         ALL RIGHT.  MS. CHRISLEY, YOU ARE THE DEFENDANT IN

15   THIS CASE.

16         YOU MAY REMAIN SEATED.

17         AND AS THE DEFENDANT, YOU HAVE THE RIGHT TO ALLOCUTE.

18   THAT MEANS YOU HAVE THE RIGHT TO MAKE A STATEMENT IN OPEN COURT

19   BEFORE I IMPOSE SENTENCE.

20         FIRST OF ALL, MA'AM, DO YOU UNDERSTAND THAT RIGHT?

21         THE DEFENDANT:  YES, MA'AM, I DO.

22         THE COURT:  SECOND, IS THAT RIGHT ONE THAT YOU HAVE

23   DISCUSSED WITH YOUR LEGAL COUNSEL?

24         THE DEFENDANT:  YES, MA'AM, IT IS.

25         THE COURT:  AND, THIRD AND FINALLY, MA'AM, AT THIS

29

1    TIME, WOULD YOU LIKE TO EXERCISE YOUR RIGHT TO MAKE A

2    STATEMENT, OR WOULD YOU PREFER TO EXERCISE YOUR RIGHT TO REMAIN

3    SILENT?

4            THE DEFENDANT:  I WOULD LIKE TO MAKE A STATEMENT,

5    PLEASE.

6            THE COURT:  YOU MAY DO SO FROM WHERE YOU ARE, SEATED

7    POSITION.  THANK YOU, MA'AM.

8            THE DEFENDANT:  THANK YOU.

9            YOUR HONOR, I WOULD LIKE TO SAY THAT I'VE HAD YEARS

10   TO -- TO THINK ABOUT WHAT I WANTED TO SAY TO YOU TODAY.  AND I

11   WANT TO SAY TO YOU AND TO THIS COURT THAT I AM SORRY FOR MY

12   ACTIONS AND FOR SITUATIONS THAT LED TO WHERE WE ARE TODAY.

13           I'VE HAD 20 MONTHS IN PRISON, BUT MUCH MORE TIME IN

14   PRISON, IF YOU WILL, JUST LEADING UP TO AND THE TRIAL THAT WAS

15   DEVASTATING TO ME AND TO MY FAMILY.  BUT I DO WANT TO SAY TO

16   YOU THAT I APOLOGIZE FOR MY ACTIONS AND WHAT LED ME TO WHERE I

17   AM TODAY.

18           I HAVE TRIED SINCE I SELF-SURRENDERED TO PRISON TO DO

19   EVERYTHING THAT I POSSIBLY COULD DO TO GET TO MY FAMILY AS

20   QUICKLY AS POSSIBLE.  I HAVE PROGRAMMED.  I HAVE -- I HAVE

21   TAUGHT CLASSES.  I HAVE BEEN INVOLVED IN ANYTHING POSITIVE THAT

22   I COULD DO, WHETHER THAT WAS A RELIGIOUS CLASS, A PSYCHOLOGY

23   CLASS, JUST A LIFE'S CLASS.

24           I HAVE TAKEN TESTS FOR NEW SKILLS, WHETHER THAT WAS

25   DRIVING A FORKLIFT OR WHETHER IT WAS SERVING FOOD PROPERLY.  SO

1    THE 20 MONTHS THAT I HAVE BEEN IN PRISON, YES, HAS BEEN THE

2    MOST DIFFICULT TIME OF MY LIFE AND FOR THAT OF MY ENTIRE

3    FAMILY.  AND I TAKE RESPONSIBILITY FOR THAT.

4            I -- I CANNOT EVER REPAY MY CHILDREN FOR WHAT THEY

5    HAVE HAD TO GO THROUGH.  AND FOR THAT I'M SORRY.  AND WHAT I

6    WILL TELL YOU IS THAT WHEN I RETURN TO PRISON, I WILL CONTINUE

7    TO DO EVERYTHING THAT I CAN DO TO BE BETTER, TO WORK ON MYSELF,

8    TO MAKE SURE THAT I NEVER EVER PUT MYSELF IN THIS POSITION

9    AGAIN TO EVER, EVER BE HERE.

10           THE LAST FIVE WEEKS HAVE BEEN VERY DIFFICULT.  THE

11    TRANSPORT PROCESS WAS -- WAS SOMETHING I WASN'T PREPARED FOR.

12    AND, AGAIN, I HAVE TO THANK YOU FOR THAT, BECAUSE YOU ALLOWED

13    ME TO SELF-SURRENDER.  AND AT THE TIME, I DIDN'T EVEN

14    UNDERSTAND THE MAGNITUDE OF WHAT YOU GAVE ME THAT DAY.  BUT I

15    UNDERSTAND IT EVEN MORE SO NOW AFTER GOING THROUGH THE -- FOR

16    THE PAST FIVE MONTHS -- SO -- FIVE WEEKS.  I'M SORRY.  IT FELT

17    LIKE FIVE MONTHS.

18           THE COURT:  I KNOW WHAT YOU MEAN.

19           THE DEFENDANT:  BUT I THANK YOU FOR GIVING ME THE

20    OPPORTUNITY TO SPEAK TODAY.

21           THE COURT:  THANK YOU.

22           I REMEMBER THAT DAY THAT YOU THOUGHT YOU WERE GOING

23    INTO IMMEDIATE CUSTODY, BECAUSE WHEN THE JURY SAID GUILTY, I

24    LOOKED OVER, AND I SAW YOU.  AND YOU WERE STARTING TO TAKE OFF

25    YOUR JEWELRY AND STUFF TO HAND IT OVER TO SOMEONE.  YOU THOUGHT

1    YOU WERE GOING INTO IMMEDIATE CUSTODY.  AND I THINK THAT'S WHAT
2    WAS REQUESTED.
3           LET ME SAY -- AND THIS HAS ALREADY BEEN ADDRESSED A
4    COUPLE OF TIMES TODAY ALREADY, BUT BECAUSE IT WAS IN SO MANY OF
5    THE LETTERS THAT I RECEIVED, I WANT TO ADDRESS IT, TOO.  AND
6    THAT IS ABOUT THE CHILDREN THAT ARE AT ISSUE HERE.  AND
7    PRIMARILY I UNDERSTAND WE'RE TALKING ABOUT YOUNG CHLOE --
8           THE DEFENDANT:  YES, MA'AM.
9           THE COURT:  -- AND GRAYSON.  AND I WILL SAY -- AND I
10   SAW THIS SEVERAL TIMES AND IN SEVERAL LETTERS, INCLUDING FROM
11   SAVANNAH CHRISLEY, I SAW FROM EACH OF THE KIDS' THERAPIST, IN
12   THE ALMOST 14 YEARS THAT I HAVE SERVED AS A JUDGE -- IT WILL BE
13   14 IN NOVEMBER -- I HAVE SENTENCED MANY PEOPLE TO IMPRISONMENT.
14   AND I ALWAYS TRY TO GET TO KNOW SOMETHING ABOUT THOSE PEOPLE.
15   I NEVER WANT THEM TO COME BEFORE ME AS JUST CRIMINAL DEFENDANT.
16          WHAT I'VE LEARNED IS, MOST OF THE PEOPLE I HAVE
17   SENTENCED TO IMPRISONMENT HAVE CHILDREN.  AND IN MANY CASES,
18   THEY ARE YOUNG CHILDREN.  AND MANY TIMES THESE CHILDREN COME
19   FROM FAMILIES THAT DON'T HAVE THE RESOURCES TO PAY FOR
20   COUNSELING AND THERAPY, TO HELP GET THEM THROUGH THE DIFFICULT
21   SEPARATION FROM PARENTS DUE TO INCARCERATION.
22          MANY TIMES THESE CHILDREN DON'T HAVE THE STRONG
23   SUPPORT SYSTEM THAT YOUR FAMILY HAS, AS EVIDENCED BY MANY OF
24   THE LETTERS THAT WERE WRITTEN TO ME.  AND AS THE GOVERNMENT
25   SAID EARLIER, THAT IS HARD.  IT SADDENS ME EVERY TIME I SEE

1    CHILDREN GOING THROUGH THAT.  I CAN'T HELP BUT TO THINK ABOUT
2    THEM, BECAUSE I AM A MOTHER.
3              BUT WHAT I HAVE TO REMIND MYSELF OF SO THAT I CAN DO
4    MY JOB EFFECTIVELY IS, I AM NOT THE ONE WHO MADE THE CHOICES TO
5    PUT THOSE KIDS IN THAT POSITION.  AND WHAT I WOULD SAY TO ANY
6    ADULT WHO IS ENTRUSTED WITH THE CARE AND THE SUPERVISION OF A
7    YOUNG CHILD AND WHO IS PUTTING FALSE, MISLEADING, INACCURATE
8    INFORMATION OUT THERE INTO THE UNIVERSE, THAT INFORMATION IS
9    GOING TO MAKE ITS WAY BACK TO THAT YOUNG CHILD, BECAUSE EVEN IF
10   YOU AREN'T SAYING IT DIRECTLY TO THAT CHILD, CHILDREN FIND
11   THEIR WAY TO THE INTERNET, AND OTHER KIDS TALK.  AND IT DOESN'T
12   TAKE A LICENSED THERAPIST LIKE THE ONES WHO WROTE ME LETTERS TO
13   RECOGNIZE THAT, ONCE THAT CHILD DISCOVERS THE REALITY AND THAT
14   WHAT HE OR SHE HAS BEEN TOLD IS NOT WHAT'S REALLY GOING ON IN
15   THE CASE AND IS NOT ACCURATE IN TERMS OF WHEN MOMMY AND DADDY
16   ARE COMING HOME, IT'S SUCH A SIGNIFICANT LETDOWN THAT IT IS A
17   SERIOUS RISK TO THAT CHILD'S EMOTIONAL AND MENTAL WELL-BEING,
18   THE SAME WELL-BEING THAT I AM BEING ASKED TO CONSIDER.
19             AND SO WHAT I WOULD SAY TO ANYBODY INVOLVED IN THIS
20   CASE WHO IS RESPONSIBLE FOR THE CARE OF THESE CHILDREN AT ISSUE
21   THAT WE'RE TALKING ABOUT SO MUCH HERE IS, I HOPE THAT YOU ARE
22   MORE CONCERNED WITH THEIR WELL-BEING, NOT WITH ANY TV RATINGS,
23   PODCAST AUDIENCES, ANYTHING, BUT WITH THEIR WELL-BEING SO THAT
24   YOU ARE, FIRST OF ALL, BEING HONEST WITH THEM ABOUT WHAT HAS
25   HAPPENED IN THIS CASE AND TEACHING THEM HOW TO BE GOOD PEOPLE.

33

1    TRUTHFUL PEOPLE THAT DON'T CHEAT, THAT DON'T STEAL, THAT

2    UNDERSTAND, WHEN YOU ENGAGE IN WRONGDOING, THERE ARE

3    CONSEQUENCES, WHETHER YOU'RE A CHILD OR AN ADULT.  THAT'S

4    IMPORTANT.

5            AND I WILL LET ALL OF YOU KNOW THAT, YES, I'VE READ

6    THE LETTERS.  AND I HEAR YOUR CONCERNS.  AND I UNDERSTAND THE

7    CONCERNS ABOUT THESE CHILDREN.  I AM CONCERNED ABOUT THEM.  BUT

8    WITH ALL DUE RESPECT, YOU DON'T GET A PASS FROM CRIMINAL

9    CONDUCT JUST BECAUSE YOU ARE A PARENT.

10            I'VE ALSO READ THE MEMOS REFERENCED.  AND I

11   UNDERSTAND THAT THE DEFENSE IS BASICALLY IN THE MEMO -- I DON'T

12   THINK IT WAS FOCUSED ON SO MUCH HERE AT THE HEARING -- SAYING

13   THAT I SHOULD USE KIND OF A MATHEMATICAL EQUATION TO CALCULATE

14   A CERTAIN PERCENTAGE OF THE GUIDELINES TO DETERMINE WHAT KIND

15   OF DOWNWARD VARIANCE I'M GOING TO USE AND THAT THAT PERCENTAGE

16   SHOULD BE THE SAME HERE AS IT WAS AT THE FIRST SENTENCING.

17            I WILL TELL YOU, I NEVER USED AN EQUATION TO

18   CALCULATE MY DOWNWARD VARIANCE.  THE DOWNWARD VARIANCE THAT I

19   GAVE, WHICH, AS I SAID EARLIER, WAS SIGNIFICANTLY LOWER THAN

20   THE GUIDELINES AND THAN WHAT THE GOVERNMENT RECOMMENDED, WAS

21   NOT DIRECTLY CONNECTED TO A PRECISE LOSS AMOUNT OR NUMBER OF

22   YEARS IN THE CONSPIRACY.  THOSE THINGS, IN MY MIND, HAD ALREADY

23   BEEN ACCOUNTED FOR IN THE GUIDELINES.

24            I SIMPLY LOOKED AT WHERE WE WERE IN THE GUIDELINES,

25   THOUGHT IT WAS WAY HIGHER THAN WHAT MRS. CHRISLEY DESERVED, AND

1   SO, CONTRARY TO WHAT THE GOVERNMENT URGED ME TO DO, I GAVE A

2   SIGNIFICANT DOWNWARD DEPARTURE.  AND SO THE THINGS THAT I

3   CONSIDERED FOR THAT, WHICH IS, THE GOVERNMENT LISTED FOR MS.

4   CHRISLEY'S AGE AND HEALTH AND THE FACT THAT SHE WAS A CARETAKER

5   FOR ELDERLY AND CHILDREN, HAVEN'T CHANGED.  NONE OF THAT HAS

6   CHANGED.  EVERYTHING THAT I TOOK INTO ACCOUNT IS STILL THE

7   SAME.  EVERYTHING THAT I BASED MY DOWNWARD VARIANCE ON IS THE

8   SAME.

9           ALTHOUGH I COMPLETELY ACCEPT THE FINDINGS OF THE

10  COURT OF APPEALS, AND WE DO NEED TO HAVE ACCURATELY CALCULATED

11  GUIDELINES, BUT MY DOWNWARD VARIANCE WAS NOT TIED TO THE LOSS

12  AMOUNT OR THE NUMBER OF YEARS IN CONSPIRACY.  SO MY SENTENCE

13  WILL NOT CHANGE.

14          TAKING INTO ACCOUNT EVERYTHING THAT HAS BEEN

15  PRESENTED TO ME AND PURSUANT TO THE SENTENCING REFORM ACT OF

16  1984, IT IS THE JUDGMENT OF THIS COURT THAT YOU, MS. JULIE

17  CHRISLEY, BE HEREBY COMMITTED TO THE CUSTODY OF THE BUREAU OF

18  PRISONS TO BE IMPRISONED FOR A TERM OF 84 MONTHS AS TO COUNTS

19  ONE THROUGH SEVEN, AND 12; AND 60 MONTHS AS TO COUNTS EIGHT AND

20  NINE, ALL COUNTS CONCURRENT.

21          YOU ARE FURTHER ORDERED TO PAY TO THE UNITED STATES A

22  SPECIAL ASSESSMENT OF $1,000 -- THAT'S $100 PER COUNT -- DUE

23  IMMEDIATELY.

24          I WILL WAIVE THE FINE AND COST OF INCARCERATION IN

25  LIGHT OF THE HIGH AMOUNT OF RESTITUTION.

1      YOU ARE ORDERED TO MAKE RESTITUTION IN THE AMOUNT OF

2  $4,740,645.04, JOINT AND SEVERAL WITH CODEFENDANT TODD

3  CHRISLEY.  AND THAT RESTITUTION SHALL BE PAID AS OUTLINED IN

4  THE J&C, TO THE BENEFICIARIES LISTED THERETO.

5      UPON YOUR RELEASE FROM IMPRISONMENT, YOU SHALL BE

6  PLACED ON SUPERVISED RELEASE FOR FIVE YEARS ON COUNTS ONE

7  THROUGH SEVEN, AND 12.  ALSO THREE YEARS ON COUNTS EIGHT AND

8  NINE.  ALL SUCH TERMS TO RUN CONCURRENT.

9      YOU MUST REPORT TO THE PROBATION OFFICE IN THE

10  FEDERAL DISTRICT WHERE YOU ARE AUTHORIZED TO RESIDE WITHIN 72

11  HOURS OF YOUR RELEASE FROM IMPRISONMENT UNLESS OTHERWISE

12  DIRECTED BY PROBATION.

13      WHILE ON SUPERVISED RELEASE, YOU WILL BE SUBJECT TO

14  MANDATORY, SPECIAL, AND STANDARD CONDITIONS, ALL OF WHICH

15  PROBATION WILL REVIEW WITH YOU AT THE APPROPRIATE TIME.  BUT IN

16  THE MEANTIME, I WILL TELL YOU THAT THE MANDATORY CONDITIONS

17  INCLUDE THAT YOU SHALL NOT COMMIT ANOTHER FEDERAL, STATE, OR

18  LOCAL CRIME.

19      YOU SHALL NOT UNLAWFULLY POSSESS A CONTROLLED

20  SUBSTANCE.

21      YOU MUST SUBMIT TO DRUG TESTING AND DNA SUBMISSION AS

22  DIRECTED BY PROBATION.

23      SOME OF THE SPECIAL CONDITIONS INCLUDE THAT YOU MUST

24  SUBMIT YOUR PERSON, PROPERTY, HOME, RESIDENCE, ELECTRONIC

25  COMMUNICATIONS OR DATA STORAGE DEVICES TO A SEARCH AS DIRECTED

1   BY PROBATION AND ALLOW PROBATION TO CONFISCATE AND/OR DISPOSE

2   OF ANYTHING THEY DEEM TO BE CONTRABAND.

3            YOU MUST MAKE A FULL AND COMPLETE DISCLOSURE OF YOUR

4   FINANCES AND NOT INCUR ANY NEW CREDIT CHARGES OR OPEN

5   ADDITIONAL LINES OF CREDIT WITHOUT PROBATION'S APPROVAL.  THAT

6   IS BECAUSE YOU HAVE RESTITUTION OUTSTANDING.

7            DO YOU UNDERSTAND THE SENTENCE I'VE IMPOSED, MRS.

8   CHRISLEY?

9            THE DEFENDANT:  YES, MA'AM.

10           THE COURT:  I DO FIND JUSTIFICATION IN THIS SENTENCE

11  FOR YOU, MS. CHRISLEY.  AFTER CONSIDERING ALL OF THE APPLICABLE

12  SENTENCING FACTORS PURSUANT TO 18 U.S.C. SECTION 3553(A), I

13  FIND THIS SENTENCE SHOULD PROVIDE SUFFICIENT PUNISHMENT AND

14  ADEQUATE DETERRENCE, THAT IT IS REASONABLE UNDER THE

15  CIRCUMSTANCES.

16           I DO ADVISE YOU THAT YOU DO HAVE THE RIGHT TO HAVE --

17  I GUESS THIS IS STILL GOING TO BE CORRECT SINCE -- BECAUSE IT'S

18  COME BACK TO US AGAIN.  BUT, AGAIN, YOU HAVE 14 DAYS FROM

19  JUDGMENT BEING ENTERED HERE -- YES, BECAUSE THERE'S A NEW

20  JUDGMENT THAT WILL BE SIGNED EITHER TODAY OR TOMORROW.

21           AND IF YOU'RE UNABLE TO PAY THE COST OF SUCH AN

22  APPEAL, YOU DO HAVE THE RIGHT TO ASK THE COURT TO ALLOW YOU TO

23  APPEAL IN FORMA PAUPERIS.

24           DO YOU HAVE ANY QUESTIONS ABOUT YOUR APPELLATE RIGHTS

25  AND/OR ANYTHING THAT HAS OCCURRED DURING THIS HEARING?

1          THE DEFENDANT:  NO, MA'AM.

2          THE COURT:  MR. LITTLE, ANYTHING ELSE ON BEHALF OF

3    YOUR CLIENT?

4          MR. LITTLE:  YES, YOUR HONOR.

5          THE COURT:  OKAY.

6          MR. LITTLE:  FIRST, I WANT TO REITERATE MY REQUEST IF

7    THE COURT WOULD ALLOW HER A 24-HOUR FURLOUGH TO BE ABLE TO

8    SELF-REPORT TO LEXINGTON.

9          THE COURT:  NO, SIR.

10         MR. LITTLE:  OKAY.  WE HAVE TWO OBJECTIONS TO THE

11   COURT'S SENTENCE.  I WANT TO MAKE THE RECORD JUST TO PRESERVE.

12         THE COURT:  YES, SIR.

13         MR. LITTLE:  THE FIRST IS A LACK OF CONSIDERATION OF

14   THE NEW GUIDELINES, IN PARTICULAR, THE NEW ZERO POINT OFFENDER

15   AND, IN ADDITION, THE LACK OF CONSIDERATION OF THE REDUCED LOSS

16   AMOUNT.

17         SECOND, THE SENTENCE ITSELF IS RETALIATORY BASED ON A

18   SUCCESSFUL APPEAL.

19         AND, THIRD, THAT THE COURT HAS CONSIDERED SOME EX

20   PARTE EVIDENCE.  I THINK THERE WAS REFERENCE TO A PODCAST AND

21   STATEMENTS OUTSIDE OF COURT.  SO I OBJECT TO ANY SENTENCE

22   CONSIDERATION OF FACTORS THAT ARE NOT IN THE RECORD BEFORE US.

23         THE COURT:  ALL RIGHT.  SO NOTED.

24         I WILL SAY THAT I HAVE NOT CONSIDERED ANY PODCASTS OR

25   ANYTHING IN TERMS OF THE SENTENCE.  THAT WAS A COMMENT

38

1   REFERENCING THE CHILDREN, BECAUSE THE CHILDREN HAVE BEEN

2   REFERENCED HERE, AND THE PERSON TO WHOM THAT WAS DIRECTED WROTE

3   THIS COURT A LETTER FOR CONSIDERATION DURING THIS SENTENCING.

4   AND I WILL STATE HERE, IT DID NOT FACTOR INTO MY DECISION TO

5   NOT CHANGE MY SENTENCE.

6         BUT YOUR OBJECTIONS ARE NOTED ON THE RECORD.  THANK

7   YOU.

8         MR. LITTLE:  THANK YOU.

9         THE COURT:  GOVERNMENT, ANYTHING FROM YOU?

10        MS. PETERS:  NO, YOUR HONOR.

11        THE COURT:  ALL RIGHT.  PROBATION, ANYTHING FROM YOU?

12        THE PROBATION OFFICER:  NO, YOUR HONOR.

13        THE COURT:  WE'RE ADJOURNED.  THANK YOU.

14        THE COURTROOM SECURITY OFFICER:  ALL RISE.  THIS

15   COURT IS IN RECESS.

16             (PROCEEDINGS CONCLUDED AT 10:50 A.M.)

17                  -  -  -

39

1   UNITED STATES DISTRICT COURT

2   NORTHERN DISTRICT OF GEORGIA

3   CERTIFICATE OF REPORTER

4

5

6           I DO HEREBY CERTIFY THAT THE FOREGOING PAGES ARE A

7   TRUE AND CORRECT TRANSCRIPT OF THE PROCEEDINGS TAKEN DOWN BY

8   ME IN THE CASE AFORESAID.

9           THIS, THE 1ST DAY OF OCTOBER, 2024.

10

11

12

13                              /S/ ELIZABETH G. COHN

                                _____
14                              ELIZABETH G. COHN, RMR, CRR
                                OFFICIAL COURT REPORTER
15

16

17

18

19

20

21

22

23

24

25